UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JANMARIE F.,

           Plaintiff,

-v-

ANDREW SAUL
Commissioner of Social Security,

           Defendant.

1:19-CV-01115-MJR
DECISION AND ORDER

---

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 15).

Plaintiff Janmarie F.[1] ("plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion (Dkt. No. 9) is granted and defendant's motion (Dkt. No. 13) is denied and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

## BACKGROUND[2]

Plaintiff protectively filed an application for DIB on September 7, 2016 alleging disability since March 23, 2016 due to lower back pain, ankle/foot pain, acid reflux, irritable

---

[1] In accordance with the District's November 18, 2020 Standing Order regarding the identification of non-government parties in social security opinions, plaintiff is identified solely by first name and last initial.
[2] The Court presumes the parties' familiarity with the plaintiff's medical history, which is summarized in the moving papers.

bowel, Crohn's [disease], and migraine headaches. (*See* Tr. 35, 74-75, 161).[3] Plaintiff's disability benefits application was initially denied on November 18, 2016. (Tr. 82). Plaintiff sought review of the determination and a hearing was held before Administrative Law Judge ("ALJ") Elizabeth Ebner on July 11, 2018. (Tr. 46-72). ALJ Ebner heard testimony from plaintiff, who was represented by counsel, as well as from William Cody, an impartial vocational expert ("VE"). (*Id.*). On September 5, 2018, ALJ Ebner issued a decision that plaintiff was not disabled under the Act. (Tr. 32-45). Plaintiff timely sought review of the decision by the Appeals Council and her request was denied. (Tr. 1-7). The ALJ's September 5, 2018 denial of benefits then became the Commissioner's final determination, and the instant lawsuit followed.

Born on January 27, 1968, plaintiff was 48 years old on the alleged disability onset date and 50 years old on the date of the hearing. (Tr. 50, 74). Plaintiff is able to communicate in English, has at least a high school education, and previously worked as a secretary and administrative assistant. (Tr. 41, 51-52).

## DISCUSSION

I.   *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic

---

[3] References to "Tr." are to the administrative record in this case.

evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II. *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of

not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is

not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.*

If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.   *The ALJ's Decision*

The ALJ found that plaintiff met the insured status requirements of the Act through December 31, 2020. (Tr. 37). The ALJ then followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff did not engage in substantial gainful activity since the alleged onset date of March 23, 2016. (*Id.*). At step two, the ALJ found that plaintiff had the following severe impairments: (1) status post left ankle repair, and (2) degenerative disc disease of the lumbar spine. (*Id.*). At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 38). Before proceeding to step four, the ALJ assessed plaintiff's RFC as follows:

> [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except only frequent use of foot controls; occasional climbing ramps and stairs; occasional balancing, stooping, kneeling, crouching, and crawling; cannot work at unprotected heights or be exposed to dangerous moving mechanical parts; and only occasional exposure to vibration, extreme cold, and extreme heat; but after 45 minutes of sitting the claimant can stand for one or two minutes without going off-task or leaving the workstation; and the claimant would have to walk with a cane.

(*Id.*).

Proceeding to step four, the ALJ reviewed the vocational information and the testimony of VE Cody to conclude that plaintiff is able to perform past relevant work as a

secretary or administrative assistant given the limitations set forth in her residual functional capacity. (Tr. 41). Accordingly, the ALJ found that plaintiff had not been under a disability within the meaning of the Act from March 23, 2016, the alleged onset date, through September 5, 2018, the date of the decision. (*Id.*).

IV.  *Plaintiff's Challenges*

Plaintiff argues that this decision is not supported by substantial evidence because the ALJ relied on her own lay opinion in formulating the residual functional capacity determination.

An RFC is a "medical assessment" which the ALJ generally cannot make without medical testimony or other medical evidence to support his or her decision. *See* SSR 83-10, 1983 LEXIS 30, *17 (S.S.A. Jan. 1, 1983). "[A]lthough the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources in his decision, he [is] entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Dougherty-Noteboom v. Berryhill*, 2018 U.S. Dist. LEXIS 138097, *29-30 (W.D.N.Y. Aug. 15, 2018) (quoting *Matta v. Astrue*, 508 F. Appx. 53, 56 (2d Cir. 2013) (summary order)). Acknowledging that an ALJ's decision need not perfectly correspond with any of the opinions, it is also important to note that ALJ is not a medical professional and is not qualified to assess a claimant's RFC on the basis of bare medical findings. *See Benman v. Comm'r of Soc. Sec.*, 350 F.Supp. 3d 252, 257 (W.D.N.Y. Nov. 20, 2018) (citations omitted). "[A]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018); *see also Goble v. Colvin*, 15-CV-6302-CJS,

7

2016 U.S. Dist. LEXIS 74637, at *20 (W.D.N.Y. 2016) ("the ALJ's RFC determination must be supported by competent medical opinion; the ALJ is not free to form his own medical opinion based on the raw medical evidence"). However, in some circumstances, such as when the medical evidence shows only minor physical impairments, an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment. *See Urban v. Berryhill*, 16-CV-76-FPG, 2017 U.S. Dist. LEXIS 53774, at *8 (W.D.N.Y. Apr. 7, 2017). Where the medical findings in the record "merely diagnose [the] claimant's exertional impairments and do not relate these diagnoses to specific residual functional capabilities such as those set out in 20 C.F.R. § 404.1567[(a)-(e)] ... [the Commissioner may not] make the connection himself." *Kneeple v. Colvin*, 14-CV-33, 2015 U.S. Dist. LEXIS 157890, at *17-18 (W.D.N.Y. Nov. 12, 2015) (citations omitted).

Here, plaintiff makes two key arguments as to why the RFC determination is not supported by substantial evidence. The only opinion evidence available to the ALJ was that of a consultative examiner, Samuel Balderman, M.D., who performed a medical examination of plaintiff on November 14, 2016. (Tr. 401-08). Plaintiff first contends that the ALJ made reversible error by failing to state how much, if any, weight she assigned to Dr. Balderman's opinion. Second, she asserts that nothing in the record supports an RFC of sedentary work, particularly in the absence of opinion evidence addressing plaintiff's ability to sit, stand, and walk.

Plaintiff's first point is unavailing. The ALJ addressed the opinion of Dr. Balderman in her decision but did not expressly assign weight to it. Plaintiff contends that the failure to weigh such opinion evidence is in violation of 20 C.F.R. § 404.1527(c). Although, the

cited regulation requires that an ALJ must "*evaluate* every medical opinion [they] receive," there is no general requirement to assign weight to every opinion. *See id.* (emphasis added); *Pena v. Chater*, 968 F. Supp. 930, 937 (S.D.N.Y. 1997), *aff'd* 141 F.3d 1152 (2d Cir. 1998) ("Pursuant to its own regulations, the Commissioner must evaluate every medical opinion it receives, regardless of its source."). The regulations also require that, if a treating source's medical opinion is not afforded controlling weight, an ALJ must provide "good reasons" for the weight given that opinion. *See Greek v.* Colvin, 802 F.3d 370, 375 (2d Cir. 2015). Here, however, the opinion at issue is that of a consultative examiner, not a treating source. Therefore, the ALJ was not under the same strict mandate to provide "good reasons" for a decision not to give it controlling weight. *See Pappas v. Saul*, 414 F. Supp. 3d 657, 675 (S.D.N.Y. Nov. 6, 2019) ("[T]he same rule requiring the ALJ provide "good reasons" to a treating source's opinion does not apply to non-treating sources). Nevertheless, the requirement to explain the evaluation of a medical opinion applies to non-treating physicians as well. *See id.*

Notably, "[f]ailure to provide specific weight to a medical opinion does not constitute *per se* remandable error." *See Nolan v. Comm'r of Soc. Sec.*, 17-CV-1190-WBC, 2019 U.S. Dist. LEXIS 13209, at *10 (W.D.N.Y. Jan. 28, 2019). "The Second Circuit has held, where an ALJ fails to provide a specific weight to an opinion remand may not be necessary if the ALJ's rremand[e] can be inferred from [her] decision." *Id.*; *see Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016) (summary order) ("Although the ALJ did not describe in detail her rationale, we can infer from the decision that she attributed 'great weight' to the opinion because she found it most consistent with the record as a whole."); *see also Brault v. SSA*, 683 F.3d 443, 448 (2d Cir. 2012) (an ALJ's failure to cite specific

evidence does not indicate that such evidence was not considered); *see also Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir.1983) (holding that the court does "not require that [an] ALJ have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability").

Here, the ALJ's evaluation of Dr. Balderman's opinion is evident. Her decision recites the findings of Dr. Balderman's examination in detail and references his opinion that plaintiff had "mild to moderate limitations in walking, standing, climbing, and carrying." (Tr. 39-40). The ALJ's reliance on this opinion is demonstrated by the fact that her RFC assessment largely tracks Dr. Balderman's opinion. Although she did not assign a specific weight to the opinion, it is evident from the decision that the ALJ considered and gave at least some weight to this opinion when formulating the RFC. *C.f. Nolan*, 2019 U.S. Dist. LEXIS 13209, at *12 ("the ALJ's reasoning cannot be gleaned from his decision because the decision makes no reference to Dr. Levine's opinion regarding Plaintiff's functional abilities"). The ALJ's reasoning for doing so can be inferred because Dr. Balderman's opinion was generally consistent with the record as a whole and did not conflict with any other medical findings or opinions. Thus, there was no clear error in the ALJ's failure to explicitly assign weight to Dr. Balderman's opinion.[4]

---

[4] Plaintiff also argues that any weight assigned to Dr. Balderman's opinion was in error because Dr. Balderman did not have the latest ultrasound imaging which "confirmed neuropathy and resulted in a new diagnosis." (Dkt. No. 9-1, pg. 11). To the contrary, a consultative examiner is not required to obtain or review laboratory reports or treatment records. *See Amos v. Comm'r Soc. Sec.*, 18-CV-1367, 2020 U.S. Dist. LEXIS 54422, at *8-9 (W.D.N.Y. Mar. 27, 2020) (citing *Wright v. Berryhill*, 687 F. App'x 45, 48 (2d Cir. 2017) (the ALJ did not commit reversible error for relying on the opinion of a consultative examiner where the examiner did not review plaintiff's record, however he personally examined plaintiff and reached conclusions consistent with the objective medical evidence in the record)); *see also* 20 C.F.R. § 404.1519n(c)(1)-(7) (describing elements of a complete consultative examination). Nonetheless, on remand, the ALJ should consider whether a medical opinion is needed to interpret the limiting effect of any impairment(s) evidenced by this imaging study.

It is on plaintiff's second point that the Court determines remand is necessary. Dr. Balderman's opinion, the only medical source statement in the record, was silent as to plaintiff's functional impairments for sitting. Dr. Balderman opined that plaintiff had limitations in walking, standing, climbing, and carrying, but expressed no opinion on plaintiff's ability to sit for any period time. The ALJ had no other opinion evidence before her regarding plaintiff's sitting impairments. Yet, she concluded that plaintiff maintained the RFC to perform sedentary work, which primarily involves sitting.[5] This was in error.

The Commissioner encourages the Court to find that Dr. Balderman's omission of an opinion on plaintiff's ability to sit indicates a complete lack of limitation in that area. (Dkt. No. 13-1, pg. 11). However, an ALJ cannot infer a claimant's ability to perform a function from an opinion's silence regarding that function. *Tisdale v. Comm'r of Soc. Sec.*, 6:18-CV-6472-LJV, 2020 U.S. Dist. LEXIS 2326, at *10 (W.D.N.Y. Jan. 7, 2020); *see Rosa v. Callahan*, 168 F.3d 72, 81 (2d Cir. 1999) (rejecting ALJ's reliance on consulting physician reports where there was no indication in the reports that the consultants intended anything by their silence or that they set out to "express an opinion on the subject" of Rosa's sedentary work capacity"); *Baltes v. Berryhill*, 17-CV-211-JJM, 2018 U.S. Dist. LEXIS 195209, at *7 (W.D.N.Y. Nov. 15, 2018) (citations omitted) ("the silence of a consultative physician on an issue pertinent to a claimant's RFC is not an appropriate basis on which to resolve that issue to the claimant's detriment"); *Rodgers v. Colvin*, 16-CV-6739-CJS, 2018 U.S. Dist. LEXIS 7522, at *6-7 (Jan. 17, 2018) (collecting cases).

---

[5] Sedentary work "is defined as [a job] which involves sitting," as well as occasionally lifting and carrying light objects and a certain amount of walking and standing necessary in carrying out job duties. *See* 20 C.F.R. § 404.1567. Sedentary work requires the ability to sit for approximately six out of eight hours per workday. *See* SSR 83-10, 1983 SSR LEXIS 30, at *13; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 2016).

11

Here, neither the ALJ nor this Court can surmise whether Dr. Balderman intended anything by his silence on the issue of sitting.

Further, in the record before the ALJ was ample evidence of plaintiff's lumbar spine disease, which could reasonably be expected to affect her ability to sit. Although Dr. Balderman's opinion focused heavily on plaintiff's left ankle impairments, the radiology report attached to his examination indicates that plaintiff had "moderate degenerative disc disease [...] at L4-L5 and mild degenerative disease at L5-S1." (Tr. 407). The ALJ's decision acknowledges that plaintiff has difficulty sitting. (Tr. 39). Plaintiff testified at the hearing that she had pain while sitting and could not sit for more than a half hour or 45 minutes. (Tr. 65). The ALJ cited to other medical evidence in the record indicating treatment for lumbar spine problems, including notes about pain, reduced range of motion, and tenderness in lower back and spine. (Tr. 40). The ALJ appears to reduce the import of this evidence with the finding that, "[n]everthless, the evidence showed no evidence of [lumbar] radiculopathy." (*Id.*). These treatment notes and medical evidence do not suggest only minor impairment, and therefore the ALJ could not render a common sense judgment about plaintiff's functional capacity from them. *See Perkins v. Berryhill*, 17-CV-6327-FPG, 2018 U.S. Dist. LEXIS 115388, at *10-11 (W.D.N.Y. July 11, 2018).

The weight apparently given to Dr. Balderman's opinion in formulating the balance of the RFC does not explain how the ALJ arrived at her conclusion regarding plaintiff's ability to sit. *See Baltes*, 2018 U.S. Dist. LEXIS 195209, at *8. The ALJ appears to have taken bare medical findings and limited testimony on the issue to conclude that plaintiff was able to sit for six out of eight hours in a workday. The ALJ did add an additional RFC limitation to the effect that plaintiff could stand for one to two minutes after 45 minutes of

sitting. However, there is no basis for this very specific RFC and the ALJ does not explain how she reached it. Thus, the ALJ failed to point to any medical opinion or medical evidence which tended to establish that plaintiff had the ability to perform all the exertional demands of sedentary work. *See Mages v. Colvin*, 14-CV-00828-MAT, 2017 U.S. Dist. LEXIS 97896, at *11 (W.D.N.Y. June 24, 2017).

The Commissioner further argues that an RFC decision can be upheld despite the lack of a supportive medical source opinion. *See Corbiere v. Berryhill*, 760 F. App'x 54, 56 (2d Cir. 2019) (summary order) (affirming where the record included no medical opinions speaking to physical functioning); *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7 (2d Cir. 2017) (summary order) (affirming where ALJ rejected treating source opinion but relied on years of "contemporaneous medical assessments" relevant to her functional capacity). Here, as was the case in *Williams v. Commissioner of Social Security*, the record is devoid of any assessment of plaintiff's functional limitations for sitting. *See* 366 F. Supp. 3d 411, 416-17 (W.D.N.Y. Mar. 8, 2019). The ALJ does not refer to treatment notes or other assessments that provide any useful evaluation of plaintiff's impairments or limitations in the context of sitting. *See Smith v. Comm'r of Soc. Sec.*, 337 F. Supp. 3d 216, 226 (W.D.N.Y. Nov. 26, 2018) (citation omitted) ("While in some circumstances, an ALJ may make an RFC finding without treating source opinion evidence, the RFC assessment will be sufficient only when the record is 'clear' and contains 'some useful assessment of the claimant's limitations from a medical source.'").

By failing to clarify or otherwise supplement the only opinion in the record, the ALJ left a gap in the record and relied instead on her own lay opinion to interpret the medical records and testimony. When such an evidentiary gap exists, the ALJ's RFC

determination is not supported by substantial evidence and remand is warranted. *See Gross v. Astrue*, 2014 U.S. Dist. LEXIS 63251, *50-54 (W.D.N.Y. May 7, 2014). When facing an incomplete record, an ALJ should develop the record by obtaining a consultative examination, re-contacting a medical source, or having an expert testify at the hearing. *Id.* at *54. Thus, the Court finds that the ALJ's RFC finding is not supported by substantial evidence and that the case must therefore be remanded.[6]

In sum, this Court holds that the ALJ's decision is not supported by substantial evidence. Remand is required for clarification of Dr. Balderman's opinion, to obtain a more specific assessment of the plaintiff's physical functional limitations, and/or for the ALJ to explain with specificity the relevance of the evidence he or she relies on when reevaluating the RFC determination.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is granted, the Commissioner's motion for judgment on the pleadings (Dkt. No. 13) is denied, and this matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:   March 23, 2021
         Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge

---

[6] Based on the need for remand, the Court does not find it necessary to reach plaintiff's secondary argument that the record does not support a finding that plaintiff is able to perform the standing and walking requirements of sedentary work, even as modified. The Commissioner is directed to consider this point on remand.